IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF NICHOLAS A. MASTROIANNI, SR., by its Co-Executors, Nicholas Mastroianni II, John Mastroianni, and Stephanie Mastroianni, | |
| Plaintiff, | Civil Action No. 24-1040-CFC |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION, and FINANCIAL CREDIT INVESTMENT III SPV-B (Cayman), L.P., | |
| Defendants. | |

Kaan Ekiner and Nathan Barillo, COZEN O'CONNOR, Wilmington, Delaware; Michael J. Miller, Brian D. Burack, Duncan R. Becker, and Benjamin J. Kampf, COZEN O'CONNOR, Philadelphia, Pennsylvania

*Counsel for Plaintiff*

Jesse L. Noa and P. Andrew Smith, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware

*Counsel for Defendant Financial Credit Investment III SPV-B (Cayman) L.P.*

## MEMORANDUM OPINION

February 4, 2026
Wilmington, Delaware



COLM F. CONNOLLY
CHIEF JUDGE

At the center of this case is an insurance policy issued in 2005 by Travelers
Life and Annuity Company (Travelers) on the life of Nicholas A. Mastroianni, Sr.
(the Mastroianni policy).  According to the operative First Amended Complaint
(the Complaint), after Mr. Mastroianni died in 2022, Travelers paid the policy's
death benefit to Defendant U.S. Bank N.A. (U.S. Bank).  D.I. 8 ¶¶ 103, 105.  The
Complaint also alleges "upon information and belief" that Defendant Financial
Credit Investment III SPV-B (Cayman), L.P. (FCI Cayman) "received the
[p]olicy's death benefit proceeds after [Travelers] sent those death benefit proceeds
to U.S. Bank."  D.I. 8 ¶ 7.  The Complaint does not allege when, where, or from
whom FCI Cayman received these proceeds.

Plaintiff The Estate of Nicholas A. Mastroianni (the Estate) initiated this suit
against U.S. Bank in the Superior Court of Delaware.  D.I. 1-1.  U.S. Bank
removed the action to this Court.  D.I. 1.  About a month later, the Estate filed the
Complaint, adding FCI Cayman as a defendant.  D.I. 8.  The Estate alleges in the
Complaint's only count a claim under Delaware's so-called "insurable interest"
statute, 18 Del. C. § 2704.

Pending before me is FCI Cayman's motion pursuant to Federal Rule of
Civil Procedure 12(b)(2) to dismiss FCI Cayman as a defendant for lack of

personal jurisdiction. D.I. 25. It is undisputed that FCI Cayman is a Cayman Islands limited partnership created in 2017 with an address in the Cayman Islands. D.I. 8 ¶ 7; D.I. 27 ¶ 2; D.I 37. The Estate says that I have personal jurisdiction over FCI Cayman pursuant to sections (1) through (4) of Delaware's long-arm statute, 10 Del. C. § 3104(c). *See* D.I. 37 at 9–16. FCI Cayman counters that the Estate has neither alleged in the Complaint nor presented any evidence that would allow me to lawfully exercise jurisdiction over FCI Cayman based on section 3104(c). It also argues that exercising personal jurisdiction over FCI Cayman would violate the Constitution's Due Process Clause. I will grant the motion for the reasons explained below.

To be clear, though, section 3104(c) applies here only because of a Federal Rule of Civil Procedure not mentioned in the parties' briefing. Specifically, Rule 4(k)(1)(A) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). As a result of this rule, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). To make that determination, "the court must apply the relevant state long-arm statute to see if it permits the

2

exercise of personal jurisdiction." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

Rule 4(k)(1)(A) governs here because the Estate filed a waiver of service of summons executed by FCI Cayman. D.I. 16. Because I agree with FCI Cayman that Delaware's long-arm statute does not permit the exercise of personal jurisdiction over FCI Cayman in a Delaware state court, I do not have personal jurisdiction over FCI Cayman under Rule 4(1)(k)(A). And because of that finding, I need not and do not consider whether the Due Process Clause would also bar me from exercising jurisdiction over FCI Cayman. *See generally Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

## I.

Section 2704(a) makes it unlawful to

> procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or that individual's personal representatives or to a person having, at the time when such contract was made, an insurable interest in the individual insured.

18 Del. C. § 2704(a). Thus, section 2704(a) "require[s] that a person procuring a life insurance policy have an 'insurable interest' in the life of the insured." *Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53, 59 (Del. 2022). Section 2704(c)

limits the categories of people who can lawfully have an insurable interest in the life of an insured individual to persons and entities with close familial, legal, or business ties to that individual. So-called stranger-originated life insurance or "STOLI" policies—i.e., policies purchased by speculators on the life of strangers—lack an insurable interest and are unlawful under section 2704. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1073–74 (Del. 2011).

Section 2704(b) creates a cause of action for "the individual insured or the individual's executor or administrator, as the case may be" to recover any benefits paid by the insurer of a STOLI policy to "the beneficiary, assignee or other payee" of that policy. In this case, the Estate seeks to recover pursuant to section 2704(b) the death benefits of the Mastroianni policy Travelers paid to U.S. Bank. D.I. 8 ¶¶ 117–125.

## II.

The 31-page, 125-paragraph Complaint is, to put it mildly, a mess. It is confusing, inconsistent, vague, lacking in coherent structure, painfully repetitive, and replete with nonrelevant accusations and inuendo. It devotes pages to inappropriate legal argument. *See Osby v. Park Pictures, LLC*, 2017 WL 374902, at *5 (C.D. Cal. Jan. 25, 2017) ("Legal argument, case citations and refutation of arguments that are anticipated are not necessary or appropriate in a pleading.")

4

(quotation marks and citation omitted).  It cites in paragraph 116, for example, eleven cases that the Estate says are "just like this one," as if that somehow matters.  D.I. 8 ¶ 116.

Perhaps most frustrating are the Complaint's bridges to nowhere—references to companies and entities without explanation about how the named companies or entities have any relevance to the asserted claim.  A good example of this abuse is a ten-page section of the Complaint titled "Coventry's Two-Year, Non-Recourse Premium Finance STOLI Scheme."  D.I. 8 ¶¶ 42–74.  The Complaint alleges that this two-year scheme began in 2001.  That means that the alleged scheme ended in 2003—*two years before* Travelers issued the Mastroianni policy and *nineteen years before* Travelers paid out the policy's benefits.  To make matters worse, the opening paragraph of the section alleges that "[t]he role of Coventry, U.S. Bank, and Wells Fargo in connection with the origination, maintenance, and/or maturation of STOLI policies dates back many years," and the remaining thirty paragraphs of the section name Wells Fargo numerous times.  *See, e.g.*, D.I. 8 ¶¶ 43–44, 48, 62.  But at no point does the Complaint state or imply that nonparty Wells Fargo had anything to do with the origination, issuance, maintenance, or payment of the Mastroianni policy.

5

Another illustrative example of a bridge to nowhere is the "venture" alleged in paragraph 11 of the Complaint. According to paragraph 11,

> [i]n 2001, U.S. Bank entered into a long-standing contractual relationship (i.e., venture), centered in Delaware, with Coventry First, LLC and an American International Group, Inc. ("AIG") entity, which was an affiliate of two AIG-owned, Delaware limited liability companies known as AIG Life Settlements, LLC and Lavastone Capital, LLC.

D.I. 8 ¶ 11. Paragraph 12 alleges that the purpose of this venture was to "originate, aggregate, and securitize multi-million dollar life insurance policies on the lives of senior citizens." D.I. 8 ¶ 12. But the reference to Coventry First, LLC in paragraph 11 is the only reference to that entity in the Complaint. The Complaint does not allege that Coventry First, LLC is one of the (never named) "interrelated Delaware entities" in the Coventry "family" alleged in paragraph 2 of the Complaint to have "originated and procured" the Mastroianni policy. The Complaint also never identifies the AIG entity that U.S. Bank and Coventry First, LLC are alleged in paragraph 11 to have joined in the so-called "long-standing contractual relationship (i.e., venture)." Adding to the confusion, paragraph 43 of the Complaint alleges that AIG Life Settlements, LLC and Lavastone Capital, LLC are not, as alleged in paragraph 11, two entities, but rather are the same entity. *See* D.I. 8 ¶ 43 (alleging that Lavastone Capital, LLC "was formerly known as AIG Life Settlements LLC").

6

There are many other examples I could cite, but to cut to the chase: The Complaint utterly fails to comply with Rule 8's requirements that a complaint contain a "short and plain statement of the claim" and that "[e]ach allegation [in the complaint] . . . be simple, concise, and direct." Fed. R. Civ. P. 8. And but for the fact that U.S. Bank removed the case without good cause to this Court from the Superior Court (a competent court with a docket that enables it to resolve cases more quickly than this Court can), I would have dismissed the Complaint *sua sponte* for its failure to meet Rule 8's requirements. *See Tillio v. Northland Grp. Inc.*, 456 F. App'x 78, 79 (3d Cir. 2012) ("A district court may *sua sponte* dismiss a complaint for failure to comply with Rule 8 . . . ."); *see also In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996) (affirming district court's dismissal under Rule 8 of "unnecessarily complicated and verbose" complaint).

### III.

Fortunately, it is not necessary to understand the scope or details of the scheme the Estate purports to allege in the Complaint to resolve FCI Cayman's motion. That is because the Complaint alleges no facts, and the Estate has offered no evidence, that would provide a basis for a Delaware state court to exercise jurisdiction over FCI Cayman under subsections (1) through (4) of section 3104(c). *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) ("In deciding a motion to dismiss for lack of personal jurisdiction, [the court] take[s]

the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper.") (internal quotation marks and citations omitted).

Section 3104(c), in relevant part, authorizes a Delaware state court to

> exercise personal jurisdiction over any nonresident . . . who in person or through an agent:
>
>> (1) Transacts any business or performs any character of work or service in the State;
>>
>> (2) Contracts to supply services or things in this State;
>>
>> (3) Causes tortious injury in the State by an act or omission in this State; [or]
>>
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State[.]

10 Del. C. § 3104(c)(1)–(4). Although the Complaint names FCI Cayman twenty-five times across fifteen paragraphs, *see* D.I. 8 ¶¶ 7, 23–29, 31, 104, 106, 108–09, 124–25, it does not allege, and the Estate has not cited any evidence that shows, that FCI Cayman or one of its agents has ever transacted any business in Delaware, contracted to supply services or things in Delaware, or caused a tortious injury in Delaware. The Complaint also does not allege, and the Estate has not

8

cited any evidence that shows, that FCI Cayman regularly does or solicits business, engages in any other persistent course of conduct in Delaware or derives substantial revenue from services or things used or consumed in Delaware. Accordingly, there is no basis for a Delaware state court to exercise personal jurisdiction over FCI Cayman under section 3104(c)(1)–(4).

The Estate insists otherwise in its brief filed in opposition to the motion. It makes three arguments with respect to section 3104(c). All three lack merit.

The first argument begins on page 12 of the Estate's opposition brief. In the Estate's words:

> [1] *The [Complaint] plausibly alleges that FCI [Cayman] itself acted in Delaware, thus satisfying subsections (c)(1) and (c)(2) of the long-arm statute.* [2] Specifically, the [Complaint] alleges that FCI [Cayman] itself transacted business, performed work, and otherwise contracted for services in Delaware. [3] For instance, it is alleged that FCI [Cayman] contracted with its Delaware manager—FCI Manager—which operated FCI [Cayman] including authorizing the [Mastroianni] Policy's premium payments; assessing the Policy's market value; coordinating their claim for the Policy's death benefit with USB; receiving the Policy's death benefit and collecting management fees; and making other investment-related decisions with respect to the Policy. [D.I. 8] ¶¶ 23-29; Ex. 4 at p.33 ("Pursuant to the Management Agreement, the Company agreed to pay to the Investment Manager an annual management fee . . . for the Investment Manager to manage the investment and reinvestment of the Company's assets subject to the investment objective"). [4] FCI thus reached into Delaware and contracted with FCI Manager (and other

9

> Apollo affiliates) to transact business and otherwise perform work and supply services. 10 *Del. C.* 3104(1)–(2).

D.I. 37 at 12–13 (emphasis in the original) (footnote omitted) (bracketed numbering of sentences added for ease of reference). The factual assertions in the first two sentences of the argument are simply false, and thus it is not surprising that the Estate provides no citations in support of them. The Complaint is devoid of any allegation that FCI Cayman did anything in Delaware.

The third sentence is troubling in many respects. For starters, its introductory "[f]or instance" clause is misleading. What follows the "for instance" is not an instance of FCI Cayman itself or, for that matter, any person or entity doing anything in Delaware. The third sentence does not state—and the Complaint does not allege—that FCI Cayman or any person or entity negotiated or executed a contract, authorized a premium payment, assessed a policy's market value, coordinated a claim, received a death benefit, collected management fees, or made any investment-related decision in Delaware. Indeed, none of the paragraphs from the Complaint cited in support of the sentence (i.e., paragraphs 23–29) alleges that FCI Cayman or any other person or entity did anything in Delaware.

As for the Exhibit 4 cited by the Estate in support of the third sentence, the Estate did not provide a declaration to explain what the exhibit is or where it came from. *See Dayhoff*, 86 F.3d at 1302 ("[O]nce a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other

10

competent evidence that jurisdiction is proper.") (internal quotation marks and citations omitted).  Nor did it bother to offer such an explanation in its briefing. The exhibit appears to be a collection of pages excerpted from a "Director's report and audited financial statements" for Financial Credit Investment III Designated Activity Company for the financial year ending December 31, 2020.  Financial Credit Investment III Designated Activity Company is not named in the Complaint, and the Estate does not say in its briefing how Financial Credit Investment III Designated Activity Company is related to FCI Cayman.

The parenthetical for the citation to Exhibit 4 in the Estate's brief purports to quote a sentence from page 33 of the exhibit.  There is, however, no page 33 in Exhibit 4.  I was able to find the quoted language on page 31 of the exhibit, but in any event the sentence in question does not state or suggest in any way that FCI Cayman or an entity related to FCI Cayman did anything in Delaware.  According to the sentence, "[p]ursuant to the Management Agreement, the Company agreed to pay to the Investment Manager an annual management fee . . . for the Investment Manager to manage the investment and reinvestment of the Company's assets subject to the investment objective."  The Estate did not identify "the Company" or the "Investment Manager" in its briefing.  It appears from the exhibit that "the Company" is Financial Credit Investment III Designated Activity Company, D.I. 37-5 at 3, and "the Investment Manager" is Financial Credit

11

Investment III Manager, LLC, D.I. 37-5 at 1.  As just noted, the Complaint makes

no mention of Financial Credit Investment III Designated Activity Company.  The

Complaint does allege that Financial Credit Investment III Manager, LLC (referred

to by the Estate in its briefing as "FCI Manager") manages FCI Cayman.  D.I. 8

¶ 28.  But the Complaint does not allege, and the Estate has not pointed to any

evidence that shows, that Financial Credit Investment III Manager, LLC did

anything in Delaware.

The fourth sentence of the argument is equally troubling.  For the reasons

just explained, none of the three preceding sentences would justify the fourth

sentence's first assertion that "FCI [Cayman] reached into Delaware."  And the

sentence's second assertion—that FCI Cayman "contracted with FCI Manager (and

other Apollo affiliates) to transact business and otherwise perform work and supply

services"—is a non sequitur if not misleading response to FCI Cayman's motion.

The relevant inquiries under sections 3104(c)(1) and (2) respectively are whether

FCI Cayman or its agent "[t]ransact[ed] any business or perform[ed] any character

of work or service *in the State*" (i.e., *in Delaware*) and whether FCI Cayman

"[c]ontract[ed] to supply services or things *in this State*" (i.e., *in Delaware*).

The Estate's second argument with respect to section 3104(c) fares no better.

It reads as follows:

> [1] ***The [Complaint] plausibly alleges that FCI***
> ***[Cayman] itself caused injury in Delaware, thus***

12

> ***satisfying subsections (c)(3) and (c)(4) of the long-arm
> statute.*** [2] Consistent with Delaware's liberal approach,
> "[t]ortious injury" under subsections (c)(3) and (c)(4) of
> the long-arm statute is "not restricted to the technical
> definition of a tort, but include[s] any breach of legal duty
> for which the breaching party is liable in damages." *U.S.
> v. Conrail*, 674 F. Supp. 138, 143 (D. Del. 1987). [3] In
> its 2022 decision in *Malkin*, the Delaware Supreme Court
> held that "because STOLI policies are void *ab initio*,"
> when an investor receives their proceeds it commits "a
> violation of Article II, Section 17 of Delaware's
> Constitution and of the State's public policy." *Id.* at 65
> (cleaned up).
>
> [4] Here, FCI [Cayman] conducted due diligence on
> the [Mastroianni] Policy; acquired the Policy; coordinated
> payment for the Policy; and, after Mr. Mastroianni's death,
> directed USB to claim the Policy's death benefit, as a
> result of which FCI [Cayman] received the Policy's
> proceeds and FCI Manager and Apollo earned
> management and performance fees. [5] In other words,
> FCI [Cayman] itself violated Delaware's Constitution and
> anti-STOLI public policy and caused injury in Delaware.
> [6] FCI [Cayman] also derives substantial revenue from its
> investment policies—including the $5 million it received
> from the Policy here—as do its managers for
> "performance fees." Ex. 2; Ex. 4. [7] This conduct is also
> obviously related to the Estate's claim for the Policy's
> death benefit.

D.I. 37 at 13–14 (emphasis in the original) (bracketed numbering of sentences

added for ease of reference).

That the first sentence of the argument lacks a supporting citation is not

surprising, since the asserted fact in the sentence is not true. There are only four

events that the Complaint alleges occurred in Delaware: (1) Wilmington Trust

Company filed with the Delaware Secretary of State a certificate that created the

Nicholas Mastroianni 2005 Family Trust, D.I. 8 ¶ 21; D.I. 8-2 at 3; (2) someone

with the Wilmington Trust Company signed the application for the Mastroianni

policy, D.I. 8 ¶¶ 79, 118; (3) Travelers delivered the policy to the Nicholas

Mastroianni 2005 Family Trust at the Wilmington Trust Company, D.I. 8 ¶¶ 20,

32, 81, 118; and (4) U.S. Bank filed with the Delaware Secretary of State a

certificate that created the Coventry Life Settlements Titling Trust, D.I. 8 ¶ 14;

D.I. 8-1 at 3.  The Complaint alleges that the first three events occurred in 2005,

*see* D.I. 8 ¶¶ 75–81; D.I. 8-2 at 3, and that the fourth event occurred in 2001, *see*

D.I. 8 ¶ 14; D.I. 8-1 at 3.  The Complaint does not allege that FCI Cayman played

any role in any of these events.  Nor could anyone credibly make such an

allegation, as it is undisputed that FCI Cayman did not exist until 2017.  *See*

D.I. 27 ¶ 2; D.I 37.  In short, the Complaint does not allege, and the Estate cites no

evidence that shows, that "FCI [Cayman] itself" caused anything, let alone an

injury, to have occurred in Delaware.

The second, third, fifth, and seventh sentences are legal argument about

things that have no bearing on the pending motion.  That leaves two sentences—

the fourth and the sixth.  The fourth sentence states (without any supporting

citations) that FCI Cayman did several things related to the Mastroianni policy—

conducting due diligence on the policy, acquiring it, and coordinating and

receiving the payment of it. But it does not state, and the Estate has not even
suggested, that these actions took place in Delaware.

The sixth and remaining sentence of the second argument is problematic for
numerous reasons. As an initial matter, the sentence is a non sequitur. It does not
state—and the Complaint does not allege and there is no record evidence that
suggests—that FCI Cayman derives any revenue, let alone substantial revenue, in
Delaware. Nor does the sentence state—again, consistent with the Complaint and
the record evidence—that FCI Cayman's alleged "managers" earn or have earned
"performance fees" in Delaware. The sentence has two supporting citations:
Exhibit 2 and Exhibit 4. But neither of those exhibits shows or supports the
assertion that FCI Cayman received $5 million from the Mastroianni policy. *See
generally* D.I. 37-3; D.I. 37-5. That fact might explain why the Estate did not cite
page numbers of the exhibits, instead leaving it to me to wade through the exhibits
to see if they contain language that supports the factual assertions in the sixth
sentence.[1] Exhibit 2 appears to be either a news article about Apollo Global

---

[1] Relatedly, in the first sentence of the Statement of Facts section of its opposition
brief, the Estate says that "[i]n 2005 Coventry procured a $5 million STOLI policy
on Mr. Mastroianni." D.I. 37 at 5. It cites in support of this sentence paragraphs
75 to 81 of the Complaint. The cited paragraphs allege that *Wilmington Trust
Company* applied for and received from Travelers the Mastroianni policy. The
Complaint does not allege in any paragraph the amount of the Mastroianni policy,
and the Estate has not offered any evidence to show what the amount of the
Mastroianni policy was.

Management, Inc. or a press statement issued by Apollo Global Management, Inc.

D.I. 37-3. I say "appears to be" because, as with Exhibit 4, the Estate did not

submit a declaration to authenticate Exhibit 2 or explain what it is. *See Dayhoff*,

86 F.3d at 1302 ("[O]nce a defendant has raised a jurisdictional defense, a plaintiff

bears the burden of proving by affidavits or other competent evidence that

jurisdiction is proper.") (internal quotation marks and citations omitted). In any

event, assuming that Exhibit 2 is authentic and that the assertions in it are accurate,

it suggests at most that FCI Cayman is one of several investment funds managed

by Apollo Global Management, Inc. that collectively derive revenue from

performance fees. It does not say or suggest in any way that FCI Cayman derived

substantial revenue from services or things used or consumed in Delaware. The

bottom line is that nothing in Exhibit 2 or Exhibit 4 and nothing in the sixth

sentence or any other part of the Estate's second argument would allow for the

assertion by a Delaware state court of personal jurisdiction over FCI Cayman

under section 3104(c)(3) or (c)(4).

I turn then to the Estate's third and last argument:

> ***The [Complaint] plausibly alleges that [FCI
> Cayman]'s agents and/or co-conspirators took action in,
> and caused injury in, Delaware, thus satisfying
> subsections (c)(1), (c)(2), (c)(3), and (c)(4) of the long-
> arm statute.*** Even if this Court were to credit [FCI
> Cayman]'s self-serving assertions that it did nothing in
> Delaware itself, and further find that FCI [Cayman] caused
> no injury in Delaware, jurisdiction is still proper because

> relevant acts and harm were taken by [FCI Cayman]'s
> agents and/or co-conspirators (as explained above).

D.I. 37 at 14–15 (emphasis in the original).  Putting aside that the argument is completely lacking in supporting citations, it fails because the Complaint does not allege, and the Estate has not pointed to, any action in Delaware by any actor except for four events that occurred more than a decade before FCI Cayman was created.  Thus, those actors could not have been an agent or co-conspirator of FCI Cayman at the time they took the alleged actions.

In sum, the Estate's arguments that Delaware's long-arm statute provides a basis for this Court to exert personal jurisdiction over FCI Cayman are not just weak, they are utterly lacking in merit and marked by false and misleading assertions of fact and missing and inaccurate citations.

## IV.

Because of the false and misleading factual assertions and inaccurate and missing supporting citations in the opposition brief discussed above, I will require the Estate's counsel whose names appear on the brief to show good cause why they should not be sanctioned.  I am also concerned because combinations of these lawyers and other lawyers from their law firm have filed substantially similar

complaints in four other STOLI cases in front of me,[2] and are counsel in at least

twenty-three other STOLI cases filed in this Court.[3]  Accordingly, moving forward

I will not as a matter of course grant pro hac vice motions for lawyers from the

Estate's law firm.  Instead, if presented with a pro hac vice motion for any such

lawyer, I will take appropriate measures—including, if necessary, convening an

in-person hearing—to confirm that the lawyer who is the subject of the motion will

take seriously and abide by the Federal Rules of Civil Procedure and the norms of

professional conduct.

---

[2] *Estate of Jack Pechter v. U.S. Bank N.A.*, No. 25-1462; *Estate of Jack Pechter v. Wells Fargo Bank, N.A.*, No. 25-941; *Estate of Sally Cole v. U.S. Bank N.A.*, No. 25-239; *Estate of Arlene Sears v. U.S. Bank, N.A.*, No. 24-914.

[3] *Estate of Lumina G. Alabastro v. Wells Fargo Bank, N.A.*, No. 25-954; *Estate of Ewell E. Long v. Wilmington Sav. Fund Soc'y*, No. 25-358; *Estate of Norman Frank v. GWG DLP Master Tr.*, No. 23-584; *Ameritas Life Ins. Corp. v. Wilmington Sav. Fund Soc'y*, No. 23-236; *Ameritas Life Ins. Corp. v. Wilmington Tr. N.A.*, No. 22-910; *Ameritas Life Ins. Corp. v. Wilmington Tr. N.A.*, No. 22-907; *Ameritas Life Ins. Corp. v. U.S. Bank, N.A.*, No. 22-623; *Estate of William Gantt v. U.S. Bank*, No. 22-553; *Protective Life Ins. Co. v. Wells Fargo Bank, N.A.*, No. 21-1432; *Estate of Jack Carmel v. GIII Accumulation Tr.*, No. 21-658; *Ring v. Vida Capital, Inc.*, No. 21-48; *Estate of Albion P. McMaster v. The GIII Accumulation Tr.*, No. 20-1152; *Columbus Life Ins. Co. v. Wells Fargo Bank, N.A.*, No. 20-833; *Sun Life Assurance Co. of Can. v. Wells Fargo Bank, N.A.*, No. 20-779; *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, No. 20-744; *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, No. 20-737; *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, No. 20-736; *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, No. 20-735; *Estate of Joseph H. Daher v. LSH, Co.*, No. 20-360; *Sun Life Assurance Co. of Can. v. U.S. Bank N.A.*, No. 17-75; *Sun Life Assurance Co. of Can. v. U.S. Bank N.A.*, No. 16-1032.

V.

For the reasons discussed above, I will grant FCI Cayman's motion to dismiss for lack of personal jurisdiction (D.I. 25).  I will also require the Estate's counsel whose names appear on the opposition brief to show no later than February 27, 2026 good cause why they should not be sanctioned for the deficiencies in the opposition brief discussed above.

The Court will issue an Order consistent with this Memorandum Opinion.